# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane Mackley,                                  :
                                                :
                    Petitioner                  :
                                                :
          v.                                    :   No. 1187 C.D. 2017
                                                :   Submitted: December 22, 2017
Workers' Compensation Appeal                    :
Board (Pathmark Stores),                        :
                                                :
                    Respondent                  :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED: January 31, 2018**


          Diane Mackley (Claimant) petitions for review of an order of the

Workers' Compensation Appeal Board (Board) that affirmed decisions of a

Workers' Compensation Judge (WCJ) in consolidated proceedings under the

Workers' Compensation Act (the Act)[1] denying claim petitions filed by Claimant

and granting termination and utilization review petitions filed by Pathmark Stores

(Employer). We affirm.

          On February 22, 1998, Claimant sustained a work-related injury to her

lower back when she fell in a walk-in freezer in the course of her work for Employer

as a bakery clerk. (2016 WCJ Decisions Finding of Fact (F.F.) ¶¶1, 5a.) Following

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

the injury, Claimant continued to work at her pre-injury job with no loss of earnings. (*Id.* F.F. ¶5a; 10/20/15 Hearing Transcript (H.T.) at 9, Reproduced Record (R.R.) at 152a.) Employer accepted this injury in a stipulation that described the work injury as a non-disabling injury to the low back with no wage loss. (WCJ Decision F.F. ¶1; Employer Ex. 1, 2011 WCJ Decision F.F. ¶1, R.R. at 4a.) Claimant continued to work without work restrictions for over 16 years following the work injury and was promoted to bakery manager during that period. (10/20/15 H.T. at 9-10, 15-16, R.R. at 152a-153a, 158a-159a; Employer Ex. 5, Claimant Dep. at 21-22, R.R. at 72a-73a; Employer Ex. 1, 2011 WCJ Decision F.F. ¶9, R.R. at 5a.)

In 2010, while she continued to work without restrictions, Claimant filed a review petition seeking to expand the description of her work injury to include depression and Employer filed a termination petition. (Employer Ex. 1, 2011 WCJ Decision at 1, R.R. at 4a.) On June 15, 2011, a WCJ issued a decision granting Claimant's review petition and denying Employer's termination petition. (2016 WCJ Decisions F.F. ¶1; Employer Ex. 1, 2011 WCJ Decision, R.R. at 1a-13a.) Although the WCJ did not order that the description of Claimant's back injury be amended, the WCJ, in ruling on the termination petition, found credible and accepted as fact the diagnosis of the 1998 work injury as "lumbosacral sprain and strain, lumbar radiculopathy on right side, and facet pathology with a sacroiliac dysfunction." (Employer Ex. 1, 2011 WCJ Decision F.F. ¶¶17, 37, R.R. at 7a, 11a.) Employer appealed only the amendment of the work injury to include depression, and this Court reversed that portion of the 2011 WCJ Decision on the ground that the expert opinion that Claimant's depression was the result of her work injury lacked an adequate foundation and was therefore not competent evidence. (Employer Ex. 2 *Pathmark Stores, Inc. v. Workers' Compensation Appeal Board*

2

*(Mackley)*, (Pa. Cmwlth., No. 129 C.D. 2014, filed October 22, 2014), R.R. at 24a-33a.)

On August 23, 2014, Claimant stopped working. (2016 WCJ Decisions F.F. ¶4a; 10/20/15 H.T. at 10, R.R. at 153a.) On March 27, 2015, Employer filed a termination petition, asserting that Claimant had recovered from her work injury as of March 11, 2015. On May 14, 2015, Employer also filed a petition for review of a utilization review determination concerning the treatment provided by Claimant's physician, Dr. Sofia Lam, contending that Dr. Lam's treatment of Claimant from October 28, 2014 on was not reasonable and necessary. Claimant filed claim petitions on May 14, 2015 and October 23, 2015 asserting that she suffered a disabling aggravation of her lower back pain on August 23, 2014 from her continued work for Employer.[2] The WCJ to whom the termination petition, utilization review petition and claim petitions were assigned held an evidentiary hearing at which Claimant testified and also received testimony by trial deposition of Claimant and four other witnesses: Dr. Lam, an anethesiologist with a subspecialty in interventional pain management who had treated Claimant for her work injury since 1999; Drs. Jeffrey McConnell and Neil Kahanovitz, orthopedic surgeons who examined Claimant on behalf of Employer; and the store manager of the store where Claimant worked.

Claimant testified that she stopped work on August 23, 2014 because her back pain "was getting really bad" and she felt that she could not do her job anymore, and that Dr. Lam gave her a note that she could not return to work. (10/20/15 H.T. at 10, 13, 17, R.R. at 153a, 156a, 160a; Employer Ex. 5, Claimant

---

[2] The two claim petitions asserted the same claim, that Claimant suffered an aggravation of her lower back pain from her continued work that became disabling on August 23, 2014. The second claim petition was filed to correct the February 22, 1998 date of injury stated at the top of the first claim petition and state the date of injury as August 23, 2014.

3

Dep. at 4-7, 13-14, 23-25, R.R. at 55a-58a, 64a-65a, 74a-76a.) Claimant testified that her job as bakery manager required her to be on her feet, to bend and to lift heavy bowls, although the size of the bowls had decreased in recent years. (Employer Ex. 5, Claimant Dep. at 21-23, R.R. at 72a-74a; 10/20/15 H.T. at 9, 13, 18, R.R. at 152a, 156a, 161a.) Claimant admitted that no accident or specific incident had occurred that caused increased pain or affected her ability to work. (10/20/15 H.T. at 18, R.R. at 161a.) Claimant also testified that her pain was not limited to her lower back and included neck pain. (*Id.* at 11-12, R.R. at 154a-155a.) Claimant admitted that her back pain did not prevent her from going on a planned vacation to Paris, France shortly after she stopped working. (Employer Ex. 5, Claimant Dep. at 18-20, R.R. at 69a-71a.)

Dr. Lam opined that Claimant continued to have lower back pain from the 1998 work injury and had not recovered from that injury. (Claimant Ex. 1, 7/30/15 Lam Dep. at 7-11, 14-15, R.R. at 78a-80a; Claimant Ex. 4, 4/5/16 Lam Dep. at 9-13, 16-18, R.R. at 234a-236a.) Dr. Lam further opined that the standing, bending, lifting, and carrying in Claimant's work had caused an aggravation of her low back pain and aggravation of preexisting degenerative disc disease, opined that Claimant was no longer able to work as a result of the worsening of her pain, and testified that she advised Claimant to stop working. (Claimant Ex. 1, 7/30/15 Lam Dep. at 11-14, R.R. at 79a-80a; Claimant Ex. 4, 4/5/16 Lam Dep. at 13-14, 16-17, 27-29, 32, 40-42, R.R. at 235a-236a, 238a-239a, 241a-242a.) Dr. Lam admitted that Claimant also had pathology in her cervical spine that "has nothing to do with her work injury." (Claimant Ex. 1, 7/30/15 Lam Dep. at 21-23, R.R. at 82a.) Dr. Lam testified that her treatment of Claimant's back injury consists of facet joint injections, epidural injections, transforaminal injections, sacroiliac joint injections,

4

and neuroplasty, and that those procedures and Percocet, which she has prescribed for Claimant, are needed to reduce Claimant's pain and radicular symptoms. (Claimant Ex. 1, 7/30/15 Lam Dep. at 7, 16-18, R.R. at 78a, 80a-81a; Claimant Ex. 4, 4/5/16 Lam Dep. at 14-16, R.R. at 235a.)

Dr. McConnell opined, based on his examination of Claimant and his review of Claimant's medical records, that Claimant had recovered from all of her accepted work injuries, lumbosacral sprain and strain, lumbar radiculopathy on the right side, and facet pathology with a sacroiliac dysfunction, that Claimant was able to work at her job with Employer without restrictions, and that Claimant had not suffered a work-related aggravation of her back condition. (Employer Ex. 4, McConnell Dep. at 12-30, 38, 44, 46-47, R.R. at 106a-124a, 132a, 138a, 140a-141a.) Dr. McConnell testified that the report of a 2013 magnetic resonance imaging scan (MRI) of Claimant's lumbar spine found no nerve compression or narrowing of the spinal canal and only slight disc bulging that was consistent with mild age-related degenerative changes and was not from any traumatic injury. (*Id.* at 19-22, R.R. at 113a-116a.) Dr. McConnell further opined that Dr. Lam's treatments of Claimant were not reasonable, given Claimant's lack of nerve compression or spinal stenosis and the lack of objective evidence of sacroiliac and facet joint pain, and that Claimant required no further medical treatment for her work injury. (*Id.* at 27, 31-38, R.R. at 121a, 125a-132a.)

Dr. Kahanovitz opined, based on his examination of Claimant and his review of Claimant's medical records, that Claimant's 1998 injury was a lumbosacral sprain, that Claimant had recovered from that injury and had not suffered an aggravation of that injury or any new injury, and that Claimant was able to work at her job with Employer without restrictions. (Employer Ex. 7, Kahanovitz

5

Dep. at 12-26, R.R. at 178a-192a.) Dr. Kahanovitz testified that the 2013 MRI and a 2007 MRI of Claimant's lumbar spine found no nerve compression or any significant condition beyond normal, age-related, mild degenerative changes, and that a 2012 MRI of Claimant's cervical spine showed disc bulging at the C5-6 level. (*Id.* at 18-19, 25-26, R.R. at 184a-185a, 191a-192a.) Dr. Kahanovitz further opined that there was no basis for Dr. Lam's treatments of Claimant because there was no nerve compression or abnormality of the sacroiliac and facet joints and because Claimant reported no significant lasting improvement from the treatments. (*Id.* at 21-22, 33, R.R. at 187a-188a, 199a.)

On November 16 and 17, 2016, the WCJ issued two identical decisions denying Claimant's claim petitions and granting Employer's termination and utilization review petitions. In these decisions, the WCJ found that Claimant's testimony concerning her reason for stopping work was not credible. (2016 WCJ Decisions F.F. ¶11.) The WCJ found Dr. McConnell's opinion that Claimant had recovered from the 1998 work injury fully credible and found the testimony of Drs. McConnell and Kahanovitz more credible and persuasive than the testimony of Dr. Lam. (*Id.* ¶¶13-14.) The WCJ based these credibility determinations on the grounds that the opinions of Drs. McConnell and Kahanovitz were supported by physical examinations and objective diagnostic testing and that Dr. Lam's opinions conflicted with the facts concerning Claimant's behavior, her ability to perform her job duties for 16 years after the work injury and her ability to travel at the time that she claimed that she could not work. (*Id.* ¶13.) The WCJ also found that the utilization reviewer's opinion that Dr. Lam's treatments were reasonable and necessary was not credible because the utilization reviewer did not consider the lengthy history of those treatments and the lack of benefit from those treatments. (*Id.* ¶15.) The WCJ

6

accordingly held that Claimant had not met her burden of proof on her claim petition, and that Employer had satisfied its burden on the termination petition and utilization review petition. (*Id.* Conclusions of Law ¶¶2-4.) Claimant appealed, and on August 16, 2017, the Board affirmed. This appeal followed.[3]

Claimant argues that the WCJ erred in not finding that she had suffered a disabling aggravation of her back condition from her continued work for Employer, and that the WCJ erred in finding that she had recovered from the work injury and that Dr. Lam's treatments were not reasonable and necessary. The evidence, however, was conflicting. Claimant testified that her back pain had increased and made her unable to work and presented unequivocal medical testimony from Dr. Lam that Claimant had not recovered from her 1998 work injury, that Claimant suffered a work-related aggravation of her injury and was unable to work as a result, and that the treatments were reasonable and necessary. Employer presented unequivocal medical testimony from Dr. McConnell that Claimant had recovered from her 1998 work injury and unequivocal medical testimony from Drs. McConnell and Kahanovitz that Claimant had suffered no new work injury, that Claimant was able to work without restrictions, and that Dr. Lam's treatments were not reasonable and necessary. The WCJ found Dr. McConnell's and Kahanovitz's testimony credible and rejected Dr. Lam's testimony as less credible and less persuasive. In addition, the WCJ rejected as not credible Claimant's testimony that her low back pain made her unable to work and found the utilization reviewer's opinion that Dr. Lam's treatments were reasonable and necessary not credible.

---

[3] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence or whether constitutional rights were violated. *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 947 n.1 (Pa. Cmwlth. 2010).

Determination of the credibility of witnesses is the prerogative of the WCJ, not the role of the Board or this Court. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 59-60, 70 (Pa. Cmwlth. 2014); *Gann v. Workers' Compensation Appeal Board (MBS Management/Wellington East Development)*, 792 A.2d 701, 704 (Pa. Cmwlth. 2002). The WCJ has exclusive province over questions of credibility and evidentiary weight, and may accept or reject the testimony of any witness, including medical experts, in whole or in part. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003); *Furnari*, 90 A.3d at 59, 70; *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010).

The WCJ's credibility determinations here were supported by the record and well within her discretion. Because Claimant testified in person before the WCJ and the WCJ therefore had the opportunity to observe Claimant's demeanor, the WCJ was not required to state an explanation for her finding that Claimant was not credible. *Daniels*, 828 A.2d at 1052-53; *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). Because Drs. McConnell, Kahanovitz and Lam and the utilization reviewer did not testify in person before her, the WCJ was required to explain the reasons for her credibility determinations concerning those witnesses. *Daniels*, 828 A.2d at 1053; *Amandeo*, 37 A.3d at 76. The WCJ fully and adequately explained her reasons for finding Drs. McConnell and Kahanovitz credible and for rejecting Dr. Lam's testimony and the utilization reviewer's report. The fact that Dr. Lam was Claimant's treating physician does not invalidate this credibility determination. While a WCJ may give greater credence to a treating physician's testimony, that is

8

merely a factor that the WCJ may weigh in assessing credibility; the WCJ is not required to find a treating physician credible or more credible than a non-treating medical expert. *Anderson*, 15 A.3d at 945-46, 948-49; *Williams v. Workmen's Compensation Appeal Board (Montgomery Ward)*, 562 A.2d 437, 441 n.6 (Pa. Cmwlth. 1989).

It was Claimant's burden on her claim petitions to prove both that she has suffered a work-related injury and that the injury caused the disability for which she seeks compensation. *Amandeo*, 37 A.3d at 75-76 n.4; *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071, 1077 (Pa. Cmwlth. 2009) (*en banc*). Moreover, because the injury was claimed to result from the cumulative effect of Claimant's work rather than from a specific event or accident, Claimant was required to prove by credible, competent medical evidence that she suffered a work-related aggravation of her back pain. *Calcara v. Workers' Compensation Appeal Board (St. Joseph Hospital)*, 706 A.2d 1286, 1289 (Pa. Cmwlth. 1998) (causation of a gradual, cumulative injury is not obvious and must be shown by medical evidence); *Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper)*, 645 A.2d 957, 962-63 & n.9 (Pa. Cmwlth. 1994) (same). Given the WCJ's credibility determinations, Claimant could not meet her burden of proof and denial of the claim petition was required regardless of any other evidence or factual or legal issues in the case.

On the termination petition, the burden of proof was on Employer to show that Claimant had fully recovered from the work injury and could work without restrictions related to the work injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997); *Hall v. Workers' Compensation Appeal Board (America Service Group)*, 3 A.3d 734, 740 (Pa.

9

Cmwlth. 2010). Claimant argues that Employer could not satisfy its burden because Drs. McConnell and Kahanovitz admitted that Claimant complained of continued pain and because they did not believe that all of Claimant's accepted work injuries occurred and were work-related. Both of these arguments fail.

The fact that a claimant continues to report subjective pain does not preclude a finding that the claimant has fully recovered from the work injury. *Udvari*, 705 A.2d at 1293; *Schmidt v. Workers' Compensation Appeal Board (IATSE Local 3)*, 19 A.3d 1171, 1175-77 (Pa. Cmwlth. 2010). "Testimony by the employer's medical expert as to the existence of the claimant's complaints of pain does not require the WCJ to find for the claimant." *Udvari*, 705 A.2d at 1293 (emphasis omitted). Medical expert testimony that the claimant is fully recovered and can return to work without restrictions and that there are no objective medical findings that substantiate the claims of pain or connect them to the work injury is sufficient to satisfy the employer's burden on a termination petition, even if it is undisputed that the claimant complains of continued pain. *Id.*; *Schmidt*, 19 A.3d at 1175-77. Here, both Dr. McConnell and Dr. Kahanovitz testified unequivocally that there were no objective medical findings that showed a basis for Claimant's claims of pain or connected the subjective pain to any injury. (Employer Ex. 4, McConnell Dep. at 19-22, 34-37, R.R. at 113a-116a, 128a-131a; Employer Ex. 7, Kahanovitz Dep. at 18-19, 22-23, 25-26, R.R. at 184a-185a, 188a-189a, 191a-192a.)

Because an employer may not re-litigate the claimant's accepted work injuries, a medical expert's testimony is not competent to support a termination petition if it does not address the accepted work injuries and opine that the claimant has recovered from those injuries. *O'Neill v. Workers' Compensation Appeal Board (News Corp. Ltd.)*, 29 A.3d 50, 55 (Pa. Cmwlth. 2011); *Hall*, 3 A.3d at 740;

10

*Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 218 (Pa. Cmwlth. 2008).  There is no requirement, however, that the medical expert believe that the claimant actually suffered the accepted work injuries or believe that the accepted work injuries were in fact work-related.  It is well established that medical expert testimony that specifically addresses the accepted work injuries and unequivocally opines that the claimant has recovered from all of those injuries is competent and sufficient to support the termination of benefits, even though the expert does not believe that the injuries occurred or were the result of the work-place accident.  *O'Neill*, 29 A.3d at 57; *Hall*, 3 A.3d at 741; *Jackson v. Workers' Compensation Appeal Board (Resources for Human Development)*, 877 A.2d 498, 502-03 (Pa. Cmwlth. 2005); *To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003).

Although Dr. McConnell opined that he did not believe that one of the work injuries listed in the 2011 WCJ Decision, a facet pathology, was work-related, he specifically addressed all of Claimant's accepted work injuries and testified unequivocally that Claimant has fully recovered from each of her accepted work injuries, including that facet pathology.  (Employer Ex. 4, McConnell Dep. at 25-30, 37, 44, R.R. at 119a-124a, 131a, 138a.)  Dr. McConnell's testimony was therefore competent to support Employer's termination petition.  Because the WCJ found that testimony credible, Employer sustained its burden of proof and the WCJ properly granted the termination petition. *Hall*, 3 A.3d at 740-43; *Jackson*, 877 A.2d at 502-03; *To*, 819 A.2d at 1225.[4]

---

[4] Dr. Kahanovitz did not address all of the work injuries listed in the 2011 WCJ Decision and opined only that Claimant had fully recovered from a lumbar sprain and strain. (Employer Ex. 7, Kahanovitz Dep. at 23-24, R.R. at 189a-190a.)  Because the WCJ found Dr. McConnell's competent testimony credible, however, the insufficiency of Dr. Kahanovitz's opinion cannot invalidate the WCJ's ruling on Employer's termination petition.

On the utilization review petition, the burden was on Employer to prove that Dr. Lam's treatments were not reasonable and necessary. *Bedford Somerset MHMR v. Workers' Compensation Appeal Board (Turner)*, 51 A.3d 267, 272 (Pa. Cmwlth. 2012); *Leca v. Workers' Compensation Appeal Board (Philadelphia School District)*, 39 A.3d 631, 634 (Pa. Cmwlth. 2012); *Howrie v. Workers' Compensation Appeal Board (CMC Equipment Rental)*, 879 A.2d 820, 822 (Pa. Cmwlth. 2005). Both Dr. McConnell and Dr. Kahanovitz testified that Dr. Lam's treatments were not reasonable and necessary based on objective medical evidence of MRIs of Claimant's lumbar spine that showed no condition for which the treatments were appropriate. The fact that these physicians were orthopedic surgeons, rather than anesthesiologists or pain management specialists like Dr. Lam, did not impair their competence to address the reasonableness and necessity of Dr. Lam's treatments. *Leca*, 39 A.3d at 636 (requirement of Section 306(f.1)(6)(i) of the Act, 77 P.S. § 531(6)(i), that utilization review be performed by a provider of the same profession and the same or similar specialty applies only to the initial utilization review by an authorized utilization review organization, not to medical opinion submitted to a WCJ on a petition to review the utilization review determination). Because the WCJ found the testimony of Dr. McConnell and Dr. Kahanovitz credible, Employer sustained its burden of proof and the WCJ properly granted the utilization review petition. *Bedford Somerset MHMR*, 51 A.3d at 273; *Leca*, 39 A.3d at 636; *Howrie*, 879 A.2d at 822-23.

For the foregoing reasons, we conclude that the WCJ committed no error in denying Claimant's claim petitions or in granting Employer's termination and utilization review petitions. As this Court aptly stated in *Anderson*, "Claimant

12

essentially asks this Court to reweigh the evidence. This Court will not do so." 15 A.3d at 949.  Accordingly, the order of the Board is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane Mackley,                                  :
                                               :
              Petitioner                        :
                                               :
       v.                                      :    No. 1187 C.D. 2017
                                               :
Workers' Compensation Appeal                    :
Board (Pathmark Stores),                        :
                                               :
              Respondent                        :

# **O R D E R**

AND NOW, this 31st day of January, 2018, the order of the Workers'

Compensation Appeal Board in the above matter is AFFIRMED.

_____

JAMES GARDNER COLINS, Senior Judge